IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED - KZ
August 3, 2021 11:01 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems Scanned by EMS 8/3

UNITED STATES OF AMERICA

    Plaintiff,

v.                                     Case No. 1:16-CR-00035

Handsom Peter Parker

    Defendant,

_____ /

## MOTION FOR COMPASSIONATE RELEASE / SENTENCE REDUCTION
### ( PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) )

**NOW COMES**, Handsome P. Parker, "(Parker)" as Defendant, respectfully moves this Honorable Court for Compassionate Release or Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A), due to the impending risk of great bodily harm, serious injury, or potential death due to exposure to the coronavirus, as well as grave sentencing disparities.

Defendant Parker avers that release to home confinement is warranted by the coronavirus outbreak among the Brueau of Prisons (BOP) facilities, Mr. Parker's vulnerable medical conditions, and the significant risk that Mr. Parker develops a serious illness if he contracts the coronavirus while in BOP custody. Mr. Parker's vulnerable medical conditions, and the significant risk that Mr. Parker develops a serious terminal illness if he contracts the coronavirus while in BOP custody. Mr. Parker is a 28 year old man who has suffered for years from a combination of medical conditions that put him at risk of death or serious injury should he contract coronavirus.

Defendant Parker avers that he is morbidly obese with a BMI (Body Mass Index) of over 30 and battled with psychological depression, which is

further aggrivated by the ongoing coronavirus pandemic.

## INTRODUCTION

Mr. Parker is currently housed at the LOW Security F.C.I. Coleman facility, in Coleman, Florida, a run down and overcrowded prison that is active with coronavirus and cases among the residents and staff, which features open-bay dormitory style housing units.

Defendant Parker's release would not pose a danger to the community or any other person. Since entering prison in 2016, Mr. Parker has worked towards his rehabilitation. See **Exhibit "A"**. Defendant Parker has not received any disciplinary infractions in the last 12 months for any offense.

On __6-24-21__, 2021, defendant Parker sent an e-mail request to the facility Director, Warden Kathy Lane, requesting that she file a motion for compassionate release on his behalf due to the coronavirus, as well as sentencing disparities. On __6-25-21__, 2021, Mr. Parker received a response from Warden Lane instructing him to get the process statred by contacting his Unit Team. See **Exhibits "C" and "D"**. Mr. Parker on __6-25__, 2021, also filled out an Application for Reduction of Sentence and submitted it to his Unit Team. See **Exhibits "E" and "F"**. Exhibits "D" and "F" are the Certificates of Service served to both parties. As of the date of this motion, Mr. Parker has either received a denial letter from the warden regarding his request or has not been afforded with a response within the time period set forth in 18 U.S.C. § 3582(c)(1)(A). See **Exhibit "G"**, if available.

## BACKGROUND

I. <u>Procedural History - Statement of Facts</u>

On May 27, 2016, in the Western District of Michigan, defendant Parker

accepted a plea and pled guilty to a single count of possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(c). Defendant Parker was designated as a career offender and sentenced to 188 months for 2.4 grams of cocaine base.

If Mr. Parker were to be sentenced today under the First Step Act (2018) as amended, and in light of the Sixth Circuit's ruling in **United States v. Havis**, 927 F.3d. 382 (6th Cir. 2019)(en banc) defendant Parker would receive a dramatically reduced sentence (nearly 15 times less than he received).

## II. Coronavirus In Prisons

In spite of putting forth its best efforts, the coronavirus is too great of a threat and to easily spread for the BOto contain. As of this writing, scores of inmates have in the past 6-12 months tested positive as well as hundreds of recovered inmates, dozens of staff and inmate deaths. The Coleman Complex where Mr. Parker is currently housed, has the somber distinction of being the number one hot spot in the BOP and has some of the highest infection rates. Courts across the country have issued hundreds of opinions detailing the health risks of coronavirus. "In some cases, COVID-19 can cause serious, potentially permanent damage to lung tissue, and can require excessive use of a ventilator". **Thakker v. Doll**, 451 F.Supp.3d. 358, 365-66 (M.D. Pa. Mar 31, 2020). "The virus can also place greater strein on the heart muscle and can also cause damdage to the immune system." Id at 366. "These long-term consequences and likelihood of fatality increase in those of advanced age and those with other medical conditions." Id. "For those in high-risk categories, the fatality rate is thought to be approximately fifteen percent." Id.

Likewise, courts have recognized that the very nature of the correctional institutions fosters the spread of the virus among residents and

staff. "While the coronavirus pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability." **Samy v. U.S.**, No. 16-CR-20610 (AJT), 2020 Wl 1888842, at *4 (E.D. Mich. Apr 16, 2020). "Even in the best run prisons," the "fastidious hygiene" and "social distancing" measures necessary to control the spread of the novel coronavirus are "nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, enclosed facilities." **U.S. v. Esparza**, No. 07-CR-294(BLW), 2020 WL 1696084, at *2 (D. Idaho. Apr 7, 2020). The coronavirus refuses to go away, despite the best efforts of the BOP, or how the CDC wishes it to happen. Unfortunately, it has become just one more of many prison-based health risks, along with mold, spoile food, indifferent to non-existent medical care (often covered up by falsifying medical records), legionaries disease, decaying heating and ventalation systems which lowers a prisoner's life expectancy, such as the Coleman - LOW Facility. Although almost all of the federal prisons suffer from these problems, son me courts have turned a blind eye to these conditions, accepting the DOJ's laughable "Action-Plans" as true. "conditions ... have not changed with the exception of some plastic posters being put up on the walls stating 'wash your hands' and 'keep 6 feet apart'".

### III. Legal Landscape

Before the enactment of the First Step Act in December 2018, compassionate release was available only if the Bureau of Prisons filed a motion on your behalf. 18 U.S.C. § 3582 (See U.S.S.C. § 1B1.13, upon motion of the Director of the prison under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment ...). Now however, the First Step Act 92018) as amended now enables defendants to file a motion for compassionate release directly with the sentencing court, provided that they fully exhaust their administrative

rights to appeal ... or the lapse of (30) Thirty days from the receipt of such a request to the Warden of his/her facility whichever is earlier. "Where the exhaustion requirement is satisfied, the compassionate release provision of § 3582(c)(1)(A) authorizes a Court to modify a term of imprisonment after the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling circumstances warrant a reduction ... and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The compassionate release statute allows a Court to modify a defendant's term of imprisonment if (1) he fully exhausts all administrative rights [remedies]; (2) he shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction of sentence or release is consistent with" the Sentencing Commission's poilcy statements; (3) he is not a dange rto any other person or the community; and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release to the extent they are applicable. See **18 U.S.C. § 3582(c)(1)(A)**; United States Sentencing Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; **United States v. Austin**, No. 15-20609, 2020 U.S. Dist. LEXIS 85630, 2020 WL 2507622, at *1 (E.D. Mich. May 15, 2020). Mr. Parker is NOT a danger to his community. Section 1B1.13(2) of the Sentencing Guideline permits compassionate release if "the defendant is not a danger to any other person or to the community." U.S.S.G. § 1B1.13(2); **Austin**, at *1; 18 U.S.C. § 3142(g). Additionally § 3553(a)(6) warns the courts to avoid unwarranted sentencing disparities.

Until December 21, 2018, the court's authority to reduce sentences under 18 U.S.C. § 3582 was severely circumscribed as it depended on a motion initiated by the BOP, See 18 U.S.C. § 3582(c)(1)(A)(2017). The BOP however, mismanaged and underutilized the compassionate release program, according to

the Department of Justice' Office of the Inspector General. See the following: http://tinyurl.com/jc3zam5 and https://oig.justice.gov/reports/2013/e1306.pdf.

To "increas[e] the use of transparance of compassionate release," Congress amended § 3582(c)(1)(A) in the First Step Act of (2018). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 603 (Dec 21, 2018), as amended. The statute now authorizes courts to reduce a sentence upon defendant's motion, provided that defendant first asks the Director of his/her facility to move for compassionate release on his/her behalf. See 18 U.S.C. § 3582(c)(1)(A) (2020).

The Sentencing Commission has not updated its policy statement since the passage of the First Step Act, therefore, § 1B1.13 does not reflect the liberalization of the procedural requirements. See **U.S. v Ebbers**, 432 F.Supp.3d. 421, 2020 WL 91399, at *4 (S.D.N.Y. 2020) not withstanding. Courts around the country - including this Court, still rely on § 1B1.13 for guidance as to "extraordinary and compelling reasons" that warrant a sentence reduction. See **U.S. v. Drummond**, No. 1:97-CR-0019, (Civil Action No. 1:19-CV-3817) Doc. 118, at *5 (N.D. Ga. Sept 27, 2019) viewing U.S.S.G. § 1B1.13 as non-binding guidance; **U.S. v. Hill**, No. 1:05-CR-00081, Doc. 45, at 3-4 (N.D. Ga June 10, 2020) same; See also **U.S. v. Solis**, No. 16-015-CG-MU, 2019 U.S. Dist. LEXIS 2518452, at *2 (S.D. Ala June 18, 2019); **U.S. v. Heromin**, No. 8:18-CR-550-T-33SPF, 2019 U.S. Dist. LEXIS 96520, at *2 (M.D. Fla June 7, 2019) the court continues to agree with other courts that § 1B1.13 provides helpful guidance in reviewing applications for compassionate release.

However, other courts confirm that it is not limited to the technical requirements set forth in § 1B1.13 in assessing whether a defendant's application for compassionate release provides extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A) See e.g., **Hill**, supra, at

*4; **U.S. v. Ullings**, No. 1:10-CR-406, 2020 U.S. Dist. LEXIS 83104, at *6 (N.D. Ga May 12, 2020)(citing **U.S. v. Perez**, No. 17-CR-513, 2020 U.S. Dist. LEXIS 57625, at *4 (S.D.N.Y. Apr 1, 2020); **U.S. v. Eck**, 425 F.Supp.3d 573 (M.D.N.C. 2019) while the old policy statement provides helpful guidelance, it does not constrain the courts independent assessment of whether "extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)" stated otherwise, the court found it is authorized to consider all factors including enumerated ones. **U.S. v. Kowaleski**, No. 2:13-CR-0045-RWS (N.D. Ga Apr 30, 2020), Doc. 251, at *12 (collecting cases agreeing and disagreeing with the view of § 1B1.13. Petitioner asks this Honorable Court to consider § 3553(a) factors along with the individual circumstances presented.

IV. Exhaustion

Before petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), he must exhaust his administrative remedies with the BOP **or** wait **thirty** days from when he filed a request with the warden of his facility. **U.S. v. Alam**, 960 F.3d. 831, 832 (6th Cir. 2020). Accordingly, Mr. Parker has satisfied the exhaustion requirement as evidenced by **Exhibits "C" - "F"**.

The Sixth Circuit has impacted many courts with its three step test:

> At **Step One**, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At **Step Two**, a court must "find[]" whether "such a reduction is consistent with **applicable** policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(emphasis added). At **Step Three**, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [**Dillon v. U.S.**, 560 U.S. 817, 827, 130 S.Ct. 2683, 177 L.Ed.2d. 271 (2010).] **United States v. Jones**, No. 20-3701, 2020 U.S. App. LEXIS 36620, 2020 WL 6817488, at *6 (6th CIr. Nov 20, 2020)(first four alterations in original)(footnotes omitted).

Additionally, § 3553(a)(6) warns courts to avoid unwarranted

sentencing disparities. **U.S. v. Smith**, 2020 U.S. Dist. LEXIS 217605, at *6 (6th Cir Nov 20, 2020).

The § 3553(a) factors weigh in favor of Parkers release.

The Court may consider a prisoner's post-offense developments which provide the most up-to-date picture of a defendant's history and characteristics and sheds light on the likelihood that the defendant will not engage in future criminal conduct. **Pepper v. U.S.**, 562 U.S. 476, 490-93, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011). The record shows that Mr. Parker has taken full advantage of educational classes while in custody. He has taken more than 9 different courses on a variety of topics. See **Exhibit "A"**.

### V. Title 18 U.S.C. § 3553(a) Sentencing Factors

Among the sentencing factors a court must consider when determining whether to grant a reduced sentence is the need for the sentence to imposed to reflect the seriousness of the offense and provide just punishment for it, to promote respect for the law, and to avoid unwarranted sentencing disparities among defendant's with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(6).

In **U.S. v. Alexander**, No. 1:04-CR-529, 2020 U.S. Dist. LEXIS 198264 (6th Cir. 2020), at n.3, The Court notes that: Courts across the country have held that disparities between the sentence a person received and what they would receive today may constitute an extraordinary and compelling reason to reduce their sentence. See e.g., **U.S. v. Arey**, No. 5:05-CR-59, 2020 U.S. Dist. LEXIS 83785, at *13-15 (W.D. Va. May 2020)(collecting cases).

While the change in law is not retroactive, a sentencing disparity, along with additional factors, may justify compassionate release in certain cases. **U.S. v. Howell**, No. 4:14-CR-298, 2020 U.S. Dist. LEXIS 189101, at *6 (6th

Cir. N.D. Ohio Oct 13, 2020)(Polster, J.).

If the court would view Defendant Parker's situation holistically it would see it in a different light. If he were sentenced today his sentence would be shorter.

Defendant Parker should receive a measure of relief on his aggregate sentence. "Consider that one purpose of the First Step Act is to promote rehabilitation of prisoners and unwind decades of mass incarceration." **U.S. v. Brown**, 411 F.Supp.3d. 446 (S.D. Iowa 2012). At the time of defendant Parker's sentencing, the Government was able to rely on one or both of Mr. Parker's previous convictions to invoke the increased sentencing provisions of 21 U.S.C. § 841(b)(1)(A). At the time of sentencing, that was the correct view of the law. However, this has changed with the First Step Act of 2018. See **U.S. v. Wilson**, No. 19-3471, 20202 U.S. App. LEXIS 28929, at *10 (6th Cir Sept 9, 2020). Had defendant Parker been sentenced today he would not be facing penalty for several reasons, as § 401 of the First Step Act as amended 21 U.S.C. § 841(b)(1)(A) and (b) so as to require a prior conviction for a serious drug felony to enhance penalties described in that section. Mr. Parker's 2011 and 2014 convictions would not qualify. Since Mr. Parker did not serve more than one year in confinement for his 2011 drug felony (**attempt possession**) for the relied upon prior conviction, it appears his previous 2011 conviction would no longer qualify as a sentence enhancement. See **Exhibit "B"**.

Mr. Parker was classified as a career offender based on a prior conviction for (**attempt possession**) of cocaine with intent to distribute. His guidelines range was 188 to 235 months and the Court sentenced him to the low end of the range 188. The Sixth Circuit recently held that **attempted** drug offenses **no longer** qualify as a career-offender predicate. **United States v. Havis**, 927 F.3d. 382 (6th Cir 2019)(**en banc**) (holding the guidelines' definition

of a "controlled substance offense" under § 4B1.2(b) does not include attempt crimes). If sentence today, absent the career-offender predicate, Mr. Parker's guidelines range would be 0 to 18 months. Because of his prior drug history offense however, he would be subject to no mandatory minimum sentence of 0 months. While the change in law is not retroactive, sentencing disparity, along with additional factors, may justify compassionate release Mr. Parker's case. See U.S. v. Howell, No. 4:14-CR-298, 2020 Dist. LEXIS 189101, at *6 (N.D. Ohio Oct 13, 2020)(Polster, J.).

Because it is undisputed that defendant Parker would be sentenced to significantly less time today ---a sentencing disparity numbering in years--- it is clear his sentence has served as adequate punishment for his crimes.

Defendant Parker argues that his release is justified because his career offended designation, which 15X his guideline range, would not have applied under current law, the Court would likely find that the disparity created by the career offender designation constitutes an additional independent extraordinary and compelling reason for relief. U.S. v. Baker, No. 10-20513, 2020 U.S. Dist. LEXIS 145670, 2020 WL 4696594, at *4 (E.D. Mich Aug 13, 2020).

while the change in law is not retroactive, The Sixth Circuit found that a possible sentencing disparity, among wit other factors, may justify compassionate release in certain cases. See U.S. v. Flakes, 2020, U.S. Dist. LEXIS 127346, at *5 (N.D. Ohio July 20, 2020)(considering petitioner's sentencing disparity and the risks of coronavirus in prison, extraordinary and compelling grounds to reduce petitioner's sentence); See also U.S. v. Wahid, 2020 U.S. Dist. LEXIS 146851, at *3-4 (N.D. Ohio Aug 14, 2020)(finding a defendant with no preexisting health condition establishes extraordinary and compelling reasons justifying compassionate release in light of coronavirus risks), in combination with sentencing disparity.). Defendant Parker has been

in prison for 66 months. Parker's longest extent of incarceration is 9 months (See PSR). Mr. Parker has already served 5 times longer than that 9 months. Mr. Parker is not minimizing his past criminal behavior, however, he is definitely not a menace to society. Factors to consider when imposing a sentence, is for the court to impose a sentenced that is not greater than necessary to accomplish the goal. Defendant Parker's Base Offense Level before the career-offender designation was applied would have been 12 or less (See PSR p.6) due to the fact that Mr. Parker would not be § 851 enhanced. This is a grave disparity from the Base Offense Level of 34 and a History Category of 6 that he was sentenced under. Mr. Parker scored a Level 12 before the career enhancement in which his sentence would have been no more than 33 to 51 months before the 2 point reduction for acceptance of responsibility. (See PSR).

Defendant Parker would also like this Honorable Court to take notice of U.S.S.G. § 1B1.13 Application Note 1(D):

> "(D) Other Reasons [A]s determined by the Director of the bureau of prisons, there exists in the defendant's case an extraordinary and compelling reason **other than**, or **in combination with**, the reasons described in subdivision (A) through (C)".

This is the catch all provision of U.S.S.G. § 1B1.13, the impact being Mr. Parker's father who is a minister and respected pillar in his community is aging with a daughter who has cerebral palsy and is in dire need of help taking care of his daughter. Mr. Parker's little sister Janelle can not walk or talk and Mr. Parker has had multiple back and shoulder surgeries and he needs help lifting, feeding, bathing, and moving his little sister from one place to another. This factor should warrant release.

Mr. Parker has been placed on the Vocational Waiting List for several classes, such as the Culinary Arts class, but due to his lengthily prison sentence he will not be accepted any time soon, because they seem only to offer those classes closer to a prisoner's release date, even longer due to the delay

caused by the coronavirus pandemic. Mr. Parker has been working hard to better himself and has used his time wisely as shown by **Exhibit "A"**.

The Government acknowledges that Mr. Parker is not deemed a career offender in light of **Havis**, yet they have failed to relent to this miscarriage of justice, instead of trying to correct this, they instead turned a blind eye to petitioner's plight. and still oppose defendant's relief.

## VI. Relevant Conversation

Mr. Parker asserts that he has programmed and rehabilitated himself while in prison. Before the shut down of all operations due to the coronavirus, Mr. Parker was advancing himself, and virtually free of disciplinary infractions. Mr. Parker prides himself in staying out of trouble and has done extensive growth and has matured immensely. Mr. Parker is a former Street Gang member, who at a young age, bounced from foster home to foster home. Mr. Parker lived in conditions that were deplorable, with little hope for a better tomorrow. Mr. Parker was bullied viciously by his peers, due to his haggard clothing and unkempt appearance. All his life, all he wanted to be, was liked, to be accepted, and to be loved. In joining a local street gang, Mr. Parker thought he had found that protection and nurturing environment he so desperately sought, however, it was a fatal mistake. Through those negative influences Parker found himself selling drugs to make ends meet to survive. Growing up, Parker's talents arose on the basketball court, not on the street corner selling drugs, this was made evident by his low level drug arrests and subsequent convictions, before being indicted for this current case. Mr. Parker is beyond remorseful for his past transgressions, he realizes that this revolving door of prison and the cold reality of the streets is the one he no longer can bear, and does not present the life he wants to live. The time Mr. Parker has spent in

federal prison has not only opened his eyes, but he has paid his debt to society multiple times over. Parker had 2.4 grams of crack cocaine, which is consistent with his low level drug dealing narrative articulated in this motion. Mr. Parker has missed out on important life events along with precious moments that he can never re-live. Most importantly, Mr. Parker is deemed a high risk for recidivism solely due to his career offender designation. Mr. Parker continues to assert to this Honorable Court that had he been sentenced today, he would not be scores as a career offender thus greatly reducing his custodial sentence. Mr. Parker has brought his level down from medium points to minimum points but due to his no longer applicable career offender designation he is still considered a high risk for recidivism when it comes to his PATTERN Score. Mr. Parker does not present a danger or safety concern to anyone and his only aspiration is his redemption.

### VII. Release Plan

Mr. Parker has a sound and viable release plan that would keep him out of harms way and help him comfortably to reassimilate into society and be a model and productive citizen. Mr. Parker has several business plans including accessing community grants and resources to start his own landscaping company, being contracted throughout his city to rake, and clean playgrounds, and lots as well as local businesses and homes in need of his service. Parker's adopted father is a respected minister and has ties with both Wells Fargo and Amazon that will get him work as soon as he is released from custody. Amazon's recruiting team has already expressed interest in expanding their service team in the surrounding area where Mr. Parker plans to reside. Parker plans to leave Michigan and move to Maryland where his father's side of the family reside, and where he can help care for his yonunger sister along with his father. Parker

plans on starting his own van service which he will drive on his days of that will serve the community. Parker also plans to start a Non-profit, whose mission is to mentor younger kids who are at risk and who feel neglected. It is Mr. Parker's hope that by reaching out to the youth, he can prevent the next generation from making the same mistakes he made, by using his life as an example. Parker hopes to inspire kids to greatness and deter them from the thought of joining a street gang.

## CONCLUSION

I would like to state to this Court that throughout my incarceration, I have dons a lifetimes worth of self reflection and personal growth. I have lived under extremely precarious and dangerously uncertain conditions, and I would like to state to the Court that there are continued challenges that as an inmate living under coronavirus I continue to fact. This Honorable Court having found in light of **Havis v. U.S.** that I'm not deemed a career offender. Because of the First Step Act as amended, my prior convictions are no longer considered dangerous felonies. If I were sentenced today your Honor my sentence would be much less. Please hear my cry to the Honorable Court and take consideration of the facts I have presented and grant me relief.

Executed this 7 day of 27, 2021.

Respectfully submitted,

By: _____
Handsome P. Parker, Petitioner
Proceeding, Pro Se
F.C.I. Coleman - LOW
P.O. Box 1031  Unit B-2
Coleman, Florida 33521-1031

## CERTIFICATE OF SERVICE

I, Handsome P. Parker, certify that the foregoing is true, correct and made with my firsthand knowledge pursuant to the penalty of perjury, 28 U.S.C. § 1746(1), that on the date affixed below, I did place into the prison mailing system: (1) MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A), enclosed in an envelope that was addressed to the United States District Court - Western District of Michigan - Southern Division. Said mail article contained the proper amount of First Class United States Postage affixed thereto.

It appears that the parties to this action are registered with the CM/ECF Electronic Docketing System, therefore I request service by that method as well, as I am proceeding pro se.

Execute this ____ day of _____, 2021.

Respectfully submitted,

By: _____
Handsome P. Parker #20965-040
F.C.I. Coleman - LOW
P.O. Box 1031  Unit B-2
Coleman, Florida 33521-1031
Proceeding, Pro se

Handsome Parker 20965-0??
Federal Correctional Institution
  Coleman-Low
Po Box 1031
Florida, Coleman 33521

Office of clerk
United States District Court
107 federal building
410 W. Michigan Ave.
Kalamazoo, Michigan 49007